IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY BOYCE (# R-52162) ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 13 C 6526 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| JACKIE MARTELLA, et al., ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

The Court denies the motion to dismiss filed by Defendant LaTanya Williams [87] and grants in part and denies in part the joint motion to dismiss filed by Defendants Marcus Hardy and Frederick Nash [89]. Specifically, the Court denies Williams and Nash's motions to dismiss in their entirety and grants Hardy's motion to dismiss the claims against him. The Clerk is directed to terminate Hardy as a party. Williams and Nash shall answer the third amended complaint by October 24, 2014.

## STATEMENT

Pro se Plaintiff Anthony Boyce is currently incarcerated at the Pontiac Correctional Center. This action is one of eight lawsuits Boyce filed about the conditions of confinement at the Stateville Correctional Center, where Boyce was previously housed. Boyce also has an additional conditions of confinement lawsuit (*Boyce v. Hale*, 14-cv-1199-JES-JEH) pending in the United States District Court for the Central District of Illinois, where the Pontiac Correctional Center is located. In Boyce's third amended complaint, he alleges that correctional officer Frederick Nash used excessive force when handcuffing him and rejected his requests for medical attention for wrist pain. He also alleges that the other Defendants either failed to ensure that he received necessary medical care for his injuries or ignored his requests for refills of medication prescribed to treat his complaints of wrist pain. Before the Court are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants LaTanya Williams, Marcus Hardy, and Frederick Nash.

## BACKGROUND

The Court draws the following facts from Boyce's third amended complaint (R. 81) and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). In addition, the Court will construe Boyce's allegations liberally because he is proceeding pro se. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). Boyce filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Boswell Pharmacy Services (an entity responsible for filling prescriptions for

Stateville prisoners), Jackie Martella (Boswell's CEO), Frederick Nash (a correctional officer at Stateville who handcuffed Boyce), LaTanya Williams (a physician's assistant at Stateville who treated Boyce), and Marcus Hardy (Stateville's warden at the relevant time). In this order, the Court will focus on Boyce's allegations about Nash, Williams, and Hardy given their pending motions to dismiss.

### Nash

On October 28, 2011, Boyce had an appointment with psychiatrist Usha Kartan. (R. 81, Third Am. Compl., ¶ 1.) Boyce told Dr. Kartan that "he didn't want any psych medicine." (*Id.* ¶ 2.) In response, Dr. Kartan insisted that Boyce sign a document to show that he agreed that she had provided adequate care. (*Id.* ¶ 3.) When Boyce refused, Dr. Kartan became "irate" and forced him to take "psych meds." (*Id.* ¶ 4.)

Dr. Kartan then summoned correctional officer Frederick Nash, who tightly handcuffed Boyce, told him to "shut up" because he did not care if Boyce had done anything wrong, and placed Boyce – still wearing handcuffs – in an unoccupied bullpen for two hours. (*Id.* ¶¶ 5-8.) Boyce describes Nash as "a very vocal obnoxious guy" and asserts that after Nash placed him in the bullpen, Nash intentionally did not remove the handcuffs even though they did not serve any legitimate purpose. (*Id.* ¶ 8 & Ex. 43.) Boyce also asserts that the handcuffs caused him to experience severe pain. (*Id.* ¶ 8.) When Nash returned to uncuff Boyce, Nash unsuccessfully tried to provoke Boyce into a fight. (*Id.* ¶ 10.) Nash then refused to take Boyce to the Heath Care Unit despite Boyce's complaints of wrist pain. (*Id.* ¶ 11.) Boyce contends that he continues to experience severe pain in his left wrist on an "almost daily basis" that makes it difficult for him to bathe and get dressed. (*Id.* ¶ 12.)

### Williams

Physician's assistant LaTanya Williams saw Boyce on April 6, 2012. (*Id.* ¶ 14 & Ex. 1.) She prescribed an analgesic balm and a "[muscle] reliever." (*Id.* ¶ 14.) The accompanying treatment notes reflect that she gave these medications to Boyce during his appointment. The third amended complaint includes a copy of the label for an "analgesic balm" prescription bearing the dates "08/13/12 09/12/12" that states it is eligible for refill "7 days before 09/02/12." (*Id.* Ex. 27.) It also includes 2014 prescriptions for acetaminophen and Naproxen which similarly allow for refills. (*Id.* Ex. 28.) Boyce alleges that on an unspecified date, Williams ignored his request for refills for all of his pain medications. (*Id.* ¶ 15.) In addition, Boyce repeatedly wrote Williams letters asking her to refill the prescription for analgesic balm. (*Id.* Exs. 10-18.) Finally, Boyce alleges that in December 2013, he told Williams that he was in severe pain. According to Boyce, in response, Williams showed him a tube of analgesic ointment and told him to "get the hell out of [her] face." (*Id.* ¶ 17.)

2

**Hardy**

Boyce asserts that he sent complaint letters to then-warden Marcus Hardy about Nash's use of handcuffs to cause pain. (*Id.* ¶ 25.) The third amended complaint includes three letters, dated November 5, 2012, November 8, 2012, and November 25, 2012 , asking Hardy to "reprimand" Nash and criticizing Hardy for doing "nothing about Sgt Nash assaulting [him]." (*Id.* Exs, 7-9.) It also includes 2013 grievances complaining about the lack of prescription refills and the allegedly improper use of handcuffs signed by then-warden Michael Lemke. (*Id.* Exs. 2-4, 33-34 .) In his response to Hardy's motion to dismiss, Boyce states that he does "not wish to pursue a claim against Hardy for medical care. Plaintiff wants to pursue the supervisory claim against Marcus Hardy in this case." (R. 111 at 7.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. This means that a complaint must contain sufficient factual content "to allow the court 'to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put differently, a complaint "must provide enough details about the subject matter of the case to present a story that holds together." *Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. Appx. 614, 616 (7th Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010)). The Court asks "whether the story could have happened, not whether it did." *Id*.

## DISCUSSION

**I.     Physician's Assistant LaTanya Williams**

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). With respect to the subjective component of the deliberate

3

indifference test, a plaintiff must allege that the defendant in question was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Williams characterizes the claim against her as based on her alleged failure to authorize a refill of Boyce's prescription for analgesic balm on a single occasion. (R. 87, Williams Mot., 5-8.) According to Williams, Boyce, at best, merely disagrees with her treatment decision and has not alleged that he has an objectively serious medical condition.

Construing the third amended complaint liberally – as the Court must do at this stage, Boyce asserts that he suffered severe, ongoing pain following the handcuffing incident. He further asserts that Williams – a medical professional – understood that this pain required treatment and was chronic because she gave him prescription pain medication, including topical and oral analgesics, that were refillable. He then argues that her refusal to ensure that he received refills that she had prescribed rises to the level of deliberate indifference. In addition, Boyce alleges that after he told Williams in a face-to-face meeting that he was in severe pain, she showed him a tube of analgesic ointment and told him to "get the hell out of [her] face." (R. 81, Third Am. Compl., ¶ 17.) Finally, Boyce alleges that Williams ignored a series of letters, including one sent in November 2012 stating that his "wrist was killing [him]" and asking for a refill of his prescription analgesic balm. (*Id*. Ex. 16.)

At the motion to dismiss stage, the Court cannot resolve factual disputes about the nature of Boyce's purported injuries. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009) (recognizing "that delays in treating non-life-threatening but painful conditions" can "constitute a failure to address a serious medical need"). Similarly, the Court cannot resolve factual disputes about the severity of Boyce's pain or determine if the lack of a refill of the analgesic balm prescription was unreasonable. *See Berry v. Peterman*, 604 F.3d 435, 443-444 (7th Cir. 2010) (reversing grant of summary judgment in favor of prison medical officials who were aware of prisoner's complaints of ongoing dental pain but did not ensure that he received prompt care because given "[t]he medical records and [the prisoner's] steady complaints of escalating pain," a jury could find that the delay in providing treatment was unreasonable). Thus, it cannot determine if Williams consciously disregarded an objectively serious medical need. *See Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *5 (N.D. Ill. June 29, 2013) (denying motion to dismiss filed by prison medical staff based on factual disputes about the prisoner's medical condition and the constitutionality of the care that was provided). Accordingly, the Court denies Williams' motion to dismiss.

## II.     Correctional Officer Frederick Nash

Nash argues that Boyce's excessive force claim based on the use of handcuffs fails because Boyce's allegations show that handcuffs were necessary to restrain him and any pain Boyce may have suffered was de minimis. (R. 89, Hardy and Nash Mot., 3-5.) Alternatively,

Nash asserts that Boyce's complaints about wrist pain do not rise to the level of an objectively serious medical condition. (*Id*. 5-6.)

Contrary to Nash's focus on the amount of pain that Boyce suffered, the constitutionality of a use of force in a correctional setting does not turn on whether a prisoner's injuries are de minimis. *Guitron v. Paul*, 675 F.3d 1044, 1045-46 (7th Cir. 2012). Instead:

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Seventh Circuit has clarified that this standard can also be framed as an "inquiry as [to] 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. at 1046 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Prison guards are entitled to use necessary force, as "[c]ustodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable." *Id*. Nevertheless, not all applications of force are constitutional. Boyce alleges that after Nash handcuffed him, Nash told him that he did not care if Boyce had done anything wrong and placed him, still wearing tight handcuffs, in an unoccupied bullpen for two hours. Boyce also alleges that when Nash removed the handcuffs, Nash tried to provoke Boyce into a fight. At the motion to dismiss stage the Court must accept Boyce's allegations as true. These allegations state a claim for excessive force as they suggest that Nash's application of handcuffs was malicious, as opposed to a good-faith effort to restore discipline. *See id*. at 1045-46.

Boyce also appears to be attempting to state a claim for deliberate indifference against Nash based on Nash's alleged refusal to take Boyce to the health care unit to address his complaints of wrist pain associated with the use of handcuffs. As with Williams, at the motion to dismiss stage, the Court cannot determine if Boyce's wrist pain was an objectively serious condition because it cannot resolve factual disputes about the severity of Boyce's pain and the nature of his purported injuries. Similarly, with respect to the subjective prong, it cannot determine whether Nash maliciously and intentionally prevented Boyce from receiving medical treatment. While discovery may belie Boyce's allegations, they are sufficient to survive Nash's motion to dismiss. The motion is denied.

## II.     Warden Marcus Hardy

The Court will focus on Boyce's claims against Hardy based on actions taken in his capacity as Stateville's warden given Boyce's clarification, in his response to Hardy's motion to dismiss, that he does "not wish to pursue a claim against Hardy for medical care" and, instead, "wants to pursue the supervisory claim against Marcus Hardy in this case." (R. 111 at 7.) First, Hardy contends that Boyce's claims against him should be dismissed because Boyce wrote him about the handcuff incident after it occurred. He argues that he cannot be liable for an alleged failure to intervene since he could not have traveled back in time to protect Boyce from purported misconduct that had already happened.

An inmate asserting a failure to intervene claim must allege that the defendant officer had reason to know that another officer was using excessive force and had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994)). A "realistic opportunity to intervene" may exist when an officer could have called for help or cautioned the officer using excessive force to stop. *Id.*; *see also Smerling v. Dever*, No. 12 C 50362, 2014 WL 3887914, at *5 (N.D. Ill. Aug. 7, 2014). The Court agrees that Hardy cannot be liable for failing to intervene since he was not present on October 28, 2011, when Nash handcuffed Boyce and found out about Nash's use of force afterwards via complaint letters dated November 5, 2012, November 8, 2012, and November 25, 2012.

Second, with respect to Boyce's claim that Hardy failed to "reprimand" Nash and did "nothing about Sgt Nash assaulting [him]" (R. 81, Third Am. Compl., Exs, 7-9), Hardy argues that "Section 1983 could not render [him] personally liable simply because he failed to reprimand the alleged wrongdoer." (R. 89, Hardy and Nash Mot., 7.) The Court construes Boyce's contentions about the alleged need to reprimand Nash about his alleged past misconduct as a failure to supervise claim. "Section 1983 does not authorize 'supervisory liability'." *Vining–El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). For a supervisor to be liable under § 1983, the plaintiff must show that the defendant-supervisor is "personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012); *see also Paine v. Cason*, 678 F.3d 500, 512 (7th Cir. 2012) (noting that a defendant officer could only "be liable for what he did; there is no doctrine of supervisory liability for the errors of subordinates"). "To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews*, 675 F.3d at 708 (quotation omitted).

Hardy cannot have facilitated, condoned, or ignored the risk that Nash would use excessive force against Boyce given that he only learned of Nash's alleged misconduct after the fact via complaint letters. *See Cady v. Sheahan*, No. 02 C 5989, 2003 WL 288472, *3 (N.D. Ill. Feb. 7, 2003) (dismissing individual capacity claims against the Sheriff who received a complaint letter about the plaintiff's interaction with deputies when "[t]he complaint does not allege any facts showing that [the Sheriff] was involved in, directed, knew of and consented to, or acted with reckless indifference to, the incident that is the subject of this action"). Thus, to

the extent that Boyce is attempting to state a claim based on the failure to supervise, that claim is dismissed.

Dated: October 1, 2014

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge